2014 PA Super 250

| WELLS FARGO BANK N.A. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LOUIS I. SPIVAK | |
| Appellant | No. 2913 EDA 2013 |

Appeal from the Order Entered September 19, 2013
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2012-123721

BEFORE:  GANTMAN, P.J., JENKINS, J., and FITZGERALD, J.[*]

OPINION BY JENKINS, J.:                    **FILED OCTOBER 31, 2014**

Louis I. Spivak ("Spivak") appeals from the order of the Court of Common Pleas of Montgomery County granting Wells Fargo Bank, N.A.'s ("Wells Fargo") motion for summary judgment in a mortgage foreclosure action. We reverse and remand. We conclude that when a residential mortgagee delivers an Act 6 notice, commences a foreclosure action against a mortgagor ("first action"), discontinues that foreclosure action, and re-files another foreclosure action against a mortgagor for the same premises ("second action"), the lack of a new notice prior to the second action is fatal to the second action.

---

[*] Former Justice specially assigned to the Superior Court.

On or about March 29, 2007, Spivak secured a mortgage loan from Trident Mortgage Company, L.P. ("Trident") in the amount of $223,750.00 ("Loan"). Plaintiff's Reply to Defendant's New Matter, Exhibit A, Assignment of Mortgage, p. 1 (page number supplied). To evidence his obligation to repay the Loan, Spivak executed a promissory note in favor of Trident, its successors and assigns (the "Note"). *Id.* at Exhibit C, Note, pp. 1-2 (page numbers supplied). To secure his obligations under the Note, Spivak executed a purchase money mortgage (the "Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as mortgagee and nominee for Trident, its successors and assigns, granting Trident a lien and security interest in the Property. *Id.* at Exhibit B, Mortgage, *generally*. On April 19, 2007, MERS recorded the Mortgage in the Office of the Recorder of Deeds for Montgomery County (the "Recorder of Deeds").

After the Loan closing, on December 14, 2010, MERS sold the Note and assigned the Mortgage to Wells Fargo. *See id.* at Exhibit A, Assignment of Mortgage, p. 1 (page number supplied). On February 10, 2011, Wells Fargo recorded the assignment of Mortgage with the Recorder of Deeds.

In January 2010, Spivak defaulted on his obligations due under the Note and Mortgage by failing to make timely payments due under the Note on January 1, 2010 and each month thereafter. On October 30, 2010, Wells Fargo sent Spivak the combined notice of intention to foreclose in accordance with the Loan Interest and Protection Law, 41 P.S. §§ 101 *et*

- 2 -

*seq.* ("Act 6"), and the Homeowner's Emergency Mortgage Assistance Act of 1983, 35 P.S. §§ 1680.401c *et seq.* ("Act 91") (the "Notice" or the "2010 Notice"). **See generally**, Plaintiff's Brief in Support of its Motion For Summary Judgment, Exhibit F, Act 91 Notice Take Action to Save Your Home From Foreclosure.[1]

Spivak failed to cure his default under the Note and Mortgage. In December 2010, Wells Fargo filed a foreclosure action, which it subsequently discontinued in 2011 due to mortgage assignment deficiencies. Appellant's Brief at 7.

On May 24, 2012, Wells Fargo commenced the instant action,[2] its second *in rem* mortgage foreclosure action. On July 16, 2012, Spivak filed an answer with new matter wherein he admitted that he defaulted on his obligations under the Mortgage, and that Wells Fargo served him with the Notice in October 2010 — approximately two years earlier, before instituting its prior action, and before it had any ownership interest in the Note or the

---

[1] We note that Wells Fargo sent Spivak the Notice before MERS assigned the mortgage to it.

[2] Act 91's pre-foreclosure notice requirements were temporarily suspended from August 27, 2011 until October 2012. **See** 42 Pa. Bull. 5447 (Aug. 18, 2012). During that time period, mortgagees were not required to provide notice under Act 91 prior to commencing a foreclosure action. **Id**. Wells Fargo commenced this action in May 2012. Spivak argues only that the Notice failed to comply with Act 6 presumably because Wells Fargo commenced this action during the time period in which Act 91 was suspended. **See** Wells Fargo's Brief at 10, 12.

property.  ***See*** Notes 1 & 2; R.12b. On July 25, 2012, Wells Fargo filed its reply to the new matter.

On April 25, 2013, Wells Fargo filed a motion for summary judgment, attaching a copy of the Notice along with proof of mailing of the Notice and the affidavit of Jeremiah Herberg, Vice President of Loan Documentation at Wells Fargo Bank, N.A. (the "Affidavit").  Herberg averred that: (a) Spivak had defaulted on his obligations under the Mortgage by failing to make the monthly payments due on January 1, 2010 and thereafter, (b) Wells Fargo provided Spivak with the Notice in 2010, and (c) Spivak had failed to cure the default under the Mortgage or take the necessary steps to avoid foreclosure.

On May 24, 2013,[3] Spivak filed a response to the motion, asserting that the motion should be denied because the Notice: (a) failed to accurately state the amounts due and owing or to properly identify the lender[4] and (b)

---

[3] On June 17, 2013, Spivak filed a "Praecipe to Substitute Response", attaching a revised Opposition to Plaintiff's Motion for Summary Judgment in place of the May 24, 2013 response. Because the relevant arguments appeared in his original filing, the substitution is immaterial for our purposes.

[4] Spivak also argued Wells Fargo "failed to cure the mortgage assignment deficiencies before filing the within foreclosure action." Defendant's Opposition to Plaintiff's Motion for Summary Judgment, ¶ 9. He has waived this issue by failing to raise it in this Court.

Although Spivak argued Wells Fargo was not the legal owner at the time it commenced the instant matter, Spivak has not argued – either in the trial
*(Footnote Continued Next Page)*

- 4 -

had not been provided to him "within the prescribed one year period preceding the filing of the foreclosure action." R.186b-187b.[5] Additionally, he argued that he was never provided a notice of intention to foreclose in connection with the pending foreclosure action; rather, the Notice was sent in connection with Wells Fargo's prior foreclosure action. ***Id.***

On September 19, 2013, the trial court granted summary judgment to Wells Fargo and entered an *in rem* judgment in its favor. On October 14, 2013, Spivak filed a timely notice of appeal. On January 2, 2014, the trial court, without ordering Spivak to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).[6]

*(Footnote Continued)* ───────────

court or on appeal – that the 2010 Notice was deficient because Wells Fargo was not the legal owner at the time it sent the Notice. Accordingly, this issue is waived. ***See Irwin Union Nat. Bank and Trust Co. v. Famous***, 4 A.3d 1099, 1103 (Pa.Super.2010) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant").

[5] As the trial court notes in its 1925(a) opinion, neither Act 6 nor Act 91 contains a one-year notice requirement. Trial Court Opinion 1/2/2014 ("Opinion", at 2-3). ***See*** 35 P.S. §§ 1680.402, 1680.403; 41 P.S. §§ 403, 404.

[6] Although Spivak did not file the Designation of the Contents of the Reproduced Record as required by Pennsylvania Rule of Appellate Procedure 2188, we decline to quash the appeal, because we have engaged in a meaningful review by referring to the contents of the certified record and of Wells Fargo's Supplemental Reproduced Record. ***See, e.g., Downey v. Downey***, 582 A.2d 674, 678 (Pa.Super.1990) (citing ***O'Neill v. Checker Motors Corp.***, 567 A.2d 680, 681-82 (Pa.Super.1989)) (appellate court will decline to quash an appeal where effective appellate review is not precluded

*(Footnote Continued Next Page)*

Spivak now raises the following issue for our review:

I.   Whether [], Wells Fargo Bank, which previously sued [Spivak] in a mortgage foreclosure action which was voluntarily withdrawn, should be required to send a new Notice of Intention to Foreclose to [Spivak] prior to filing a second mortgage foreclosure lawsuit against [Spivak].

Appellant's Brief at 4.[7] For the reasons that follow, we find Wells Fargo was required to send a new Act 6 notice to Spivak prior to commencing the second foreclosure action against him.

When reviewing an order granting summary judgment we must determine whether the trial court abused its discretion or committed an error of law.  *Mee v. Safeco Ins. Co. of Am.*, 908 A.2d 344, 347 (Pa.Super.2006).[8] "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the

*(Footnote Continued)* ──────────

by the deficiencies of reproduced record).  Further, Wells Fargo has not moved for dismissal on this basis. *See* Pa.R.A.P. 2188.

[7] Because Spivak does not raise or brief the remaining issues discussed by the trial court in its 1925(a) opinion, they are waived. *Famous*, 4 A.3d at 1103 ("This Court will not act as counsel and will not develop arguments on behalf of an Spivak").

[8] While post-trial motions typically are required to preserve an issue on appeal, no post-trial motions are permitted where a trial court grants a motion for summary judgment. Thus, Spivak has not waived his argument on appeal by appealing directly from the grant of Wells Fargo's motion for summary judgment. *See* Pa.R.C.P. 227.1 Note; *Tohan v. Owens-Corning Fiberglass Corp.*, 696 A.2d 1195 (Pa.Super.1997).

result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." **Roth v. Ross**, 85 A.3d 590, 592-93 (Pa.Super.2014) (citing **Grossi v. Travelers Pers. Ins. Co.**, 79 A.3d 1141, 1163 (Pa.Super.2013)).  A grant of summary judgment "presents a question of law, for which our scope of review is plenary." **Sevast v. Kakouras**, 915 A.2d 1147, 1152 (Pa.2007) (citation omitted).

In analyzing a trial court's grant of summary judgment, we review the evidence in the light most favorable to the non-moving party, Spivak, and resolve all doubts as to the existence of a genuine issue of material fact against the moving party, Wells Fargo.  **Erie Ins. Exchange v. Weryha**, 931 A.2d 739, 741 (Pa.Super.2007).

Spivak argues that Act 6 requires a mortgagee to send a new Notice prior to commencing its second foreclosure action where it withdrew its prior foreclosure action.[9]  Spivak reasons that because Wells Fargo sent the

_____

[9] Although he failed to raise this defense in his answer to Wells Fargo's complaint, **see** Defendant's Answer to Plaintiff's Complaint with New Matter ¶ 8, Spivak has not waived the Act 6 issue because this defense was raised in the answer to Wells Fargo's motion for summary judgment. **See Grasso v. Thimons,** 559 A.2d 925, 929 n. 5 (Pa.Super.1989) (equitable estoppel issue first raised in answer to motion for summary judgment preserved for appeal); **Adelphia Cablevision Associates of Radnor, L.P. v. University City Housing Company**, 755 A.2d 703, 709 (Pa.Super.2000) (constitutional issue first raised in cross-motion for summary judgment preserved for appeal); **Norris v. Wood**, 485 A.2d 817, 819 (Pa.Super.1984) (constitutional issue first raised in motion for partial summary judgment preserved for appeal); Pa.R.Civ.P. 1032; Defendant's Opposition to Plaintiff's Motion for Summary Judgment ¶ 8. Further, both parties have briefed the issue and the trial court has addressed the issue in its 1925(a) opinion.
*(Footnote Continued Next Page)*

Notice before commencing and withdrawing its prior suit, its failure to provide a new Notice prior to the second action "deprived [] [him] of an opportunity to know how much money was needed to cure the default[,] which is the very reason the [Notice] is required in the first place." Appellant's Brief at 7.[10]

Section 403 of Act 6 sets forth the pre-foreclosure notice requirements imposed upon residential mortgage lenders for certain residential mortgages as follows:

> Before any residential mortgage lender may accelerate the maturity of **any residential mortgage** obligation, commence **any legal action including mortgage foreclosure** to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

41 P.S. § 403(a) (emphasis added).

Section 403(c) of Act 6 states:

> (c) The written notice shall clearly and conspicuously state:

*(Footnote Continued)* _____

Wells Fargo did not argue waiver in its brief in support of its motion for summary judgment and does not argue waiver in its brief before this Court. **See** Plaintiff's Brief in Support of its Motion for Summary Judgment at IV.C.; Wells Fargo's Brief, **generally**.

[10] Wells Fargo does not dispute that Spivak falls within the definition of a "residential mortgage debtor," **see** 41 P.S. § 101 and therefore is entitled to the protections of Act 6.

     (1)  The particular obligation or real estate security interest;

     (2)  The nature of the default claimed;

     (3)  **The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default;**

     (4)  **The time within which the debtor must cure the default;**

     (5)  The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

     (6)  The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

41 P.S. § 403(c) (emphasis added).

Section 404 of Act 6 permits a residential mortgage debtor to cure his default, "after a notice of intention to foreclose has been given pursuant to section 403 of this act, at any time at least one hour prior to the commencement of bidding at a sheriff sale or other judicial sale . . . by tendering the amount or performance specified in subsection (b) of this section." 41 P.S. § 404(a). Statutory notice, including **the amount of default** and **the debtor's right to cure the default**, is mandatory and must precede **any action** by a residential mortgage lender whereby it accelerates the maturity of the obligation, institutes legal action including foreclosure, or repossesses any security of the debtor. *General Elec. Credit Corp. v. Slawek*, 409 A.2d 420, 422-23 (Pa.Super.1979).

> Federal and state courts—in explaining and applying the provisions of Act 6 . . . —have consistently defined the Act in the following manner. Act 6 is a comprehensive interest and usury law with numerous functions, one of which is that it offers homeowners with residential mortgages a measure of protection from overly zealous residential mortgage lenders.

**Benner v. Bank of Am., N.A.**, 917 F.Supp.2d 338, 357 (E.D.Pa.2013) (quoting **In re Graboyes**, 223 Fed.Appx. 112, 114 (3d Cir.2007)) (internal quotation marks omitted). "The comprehensive statutory scheme demonstrates an extensive program designed to avoid mortgage foreclosures." **Id.** (quoting **Bennett v. Seave**, 554 A.2d 886, 891 (Pa.1989)). In the residential mortgage context, Act 6 is typically raised as a defense to mortgage foreclosure proceedings. **Id.**

Remedies for a defective Act 6 notice include setting aside the foreclosure or denying a creditor the ability to collect an impermissible fee. **See, e.g., In re Smith**, 866 F.2d 576, 578, 586 (3d Cir.1989) (holding lender's failure to properly send pre-foreclosure notice to debtor's new address before initiating foreclosure suit gave rise to debtor's cause of action for damages under Section 504 of Act 6); **id.** (citing **In re Sharp**, 24 B.R. 817, 821 (Bankr.E.D.Pa.1982) (setting aside foreclosure where lender failed to determine debtor's last known address)); **In re Burwell**, 107 B.R. 62, 67–68 (Bankr.E.D.Pa.1989) (denying creditor ability to collect property inspection fees on foreclosed mortgage in debtor's bankruptcy proceeding). "The purpose of Act 6, as shown by the cases above, is to help residential

homeowners reacquire property that has been lost, or to prevent the imminent loss of money or property, because of the impermissible actions of residential mortgage lenders." **Benner**, 917 F.Supp.2d at 357.

On October 30, 2010, Wells Fargo provided Spivak notice under Acts 6 and 91, which advised him of his right to cure the default by paying the appropriate costs at that time.[11] In December 2010, Wells Fargo filed a foreclosure action, which it subsequently withdrew in 2011. On May 24, 2012, Wells Fargo filed a new foreclosure action without providing Spivak a new Act 6 notice specifying how much he owed at that time.

The plain language of Section 403(a) of Act 6 requires a new notice before a second action. Section 403(a) states: "Before any residential mortgage lender may . . . commence **any** legal action including mortgage foreclosure to recover under [any residential mortgage obligation] . . ., such

_____

[11] The 2010 Notice stated that Spivak could cure the default before a sheriff's sale by:

> paying the total amount then past due, plus any late or other charges then due, reasonable attorney's fees and costs connected with the foreclosure sale and any other costs connected with the Sheriff's Sale as specified in writing by the lender and by performing any other requirements under the mortgage.

Plaintiff's Brief in Support of its Motion For Summary Judgment, Exhibit F, Act 91 Notice Take Action to Save Your Home From Foreclosure, p. 4 (page number supplied). Well Fargo itemized the total amount past due at that time at $14,364.23. **Id.** at 3.

person shall give the residential mortgage debtor notice of such intent at least thirty days in advance as provided in this section." 41 P.S. § 403(a) (emphasis added). Consistent with the Pennsylvania rules of statutory construction,[12] we apply the common and approved usage of the term "any" to define those legal actions which cannot be commenced without a preceding Act 6 notice. Merriam-Webster provides that "any", when utilized as an adjective, is "used to indicate a person or thing that is not particular or specific." *Merriam-Webster Dictionary*, http://www.merriam-webster.com/dictionary/any (last visited October 2, 2014). Merriam-Webster further describes its synonyms as "each" and "every." *Id.*

Under the common and approved usage, Section 403(a) of Act 6 reads: "Before any residential mortgage lender may . . . commence [**a**] legal action including mortgage foreclosure to recover under [any residential mortgage obligation] . . ., such person shall give the residential mortgage debtor notice of such intent at least thirty days in advance as provided in this section." A second foreclosure action is "[**a**] legal action . . . to recover under [a residential mortgage obligation]"; thus, the mailing of an Act 6 notice is a prerequisite to its commencement.

---

[12] *See* 1 Pa.C.S. § 1903 (providing courts shall construe words and phrases according to the rules of grammar and according to their common and approved usage). *See also Commonwealth v. Crawford*, 24 A.3d 396, 401 (Pa.Super.2011) (applying common and approved usage of various terms to define prohibited acts under statute).

Further, the only adjective preceding the term "legal action" in the statute is "any" — not "first," "original," or some other term providing that one notice is satisfactory for multiple foreclosure actions. To the contrary, the indefinite article "a" indicates that **every** mortgage foreclosure action must be preceded by a lender sending notice to a debtor.

The synonyms of "any" — "each" and "every" — also support our interpretation of Act 6. When each synonym is inserted into the statute, it reads: "Before any residential mortgage lender may . . . commence [**each/every**] legal action including mortgage foreclosure to recover under [any residential mortgage obligation] . . ., such person shall give the residential mortgage debtor notice of such intent at least thirty days in advance as provided in this section." Phrased this way, the statute does not distinguish between the first and second foreclosure actions: a notice is required before each action.

Therefore, by including the word "any" in the Section 403(a) of Act 6, the legislature intended that a lender send a notice to a debtor before each and every foreclosure action. Only this construction gives Section 403 its intended meaning.

An Act 6 notice enables a financially troubled residential homeowner to learn exactly what sum of money is necessary to cure the mortgage default. Since compounded interest accrues on a mortgage loan based on the passage of time between the first notice and the second notice (along with

unpaid monthly loan payments and any additional reasonable charges), the sum of money necessary to cure the default at the time of the second notice will be greater, and likely substantially so, than the amount of money needed at the time of the first notice.[13] Even if the amount at the time of the second notice is only slightly greater, this is immaterial under Act 6 because Section 403(c)(3) affords the debtor the right to know the exact amount required to cure the default.[14]

We find further support for our construction of "any" in the persuasive reasoning of the United States Bankruptcy Court for the Eastern District of Pennsylvania in **In re Miller**, 90 B.R. 762 (Bankr.E.D.Pa.1988):

> In [**In re**] **Mosley**, [85 B.R. 942, 954 (Bankr.E.D.Pa.1988),] we pointed out that the most important consideration in the notice, for purposes of 41 P.S. § 403(c)(3), is whether the borrower can ascertain the precise amount due to the lender to

---

[13] For example, in the approximately eight and a half months that passed between when Wells Fargo calculated the total amount due for purposes of its complaint in the second foreclosure action and when Wells Fargo calculated the interest due for purposes of its motion for summary judgment in the second foreclosure action, the interest due on the premises increased $10,019.19 from $33,493.97 to $43,513.16. **Compare** Plaintiff's Complaint in Mortgage Foreclosure ¶ 6 **with** Plaintiff's Motion for Summary Judgment, Exhibit B, Plaintiff's Affidavit in Support of its Motion for Summary Judgment, p. 1 (page number supplied)).

[14] Wells Fargo asserts that Spivak does not allege to have made any payments after the Notice was sent. **See** Spivak's Brief, **generally**; Wells Fargo's Brief at 16. We emphasize that the debtor's actions are irrelevant to whether a second Act 6 notice was necessary in this case; the requirement for an additional notice under Act 6 flows from the statute's purpose and Section 403's mandate regarding the required information in the notice.

> cure the default at any given point in time by reference only to the notice. We should add that the important consideration in the notice, for purposes of 41 P.S. § 403(c)(2), is whether it communicates to the borrower how the precise amount of the default claimed is calculated.
>
> * * *
>
> We believe that the [lender]'s failure to articulate the nature of the default of its arrangement with the [d]ebtor and its failure to explain, by any comprehensible ma[nn]er, how it calculated the default renders the notice in issue grossly violative of 41 P.S. § 403(c)(2) and (c)(3).

*Id.* at 768.

Similarly, a second notice is also necessary to effectuate Sections 404(a) and 403(c)(4) of Act 6, which address the time period within which to cure the default. If the debtor is not apprised of the exact sum of money necessary to cure the default, Sections 403(c)(4) and 404(a) of Act 6 lack effect because a time period to pay serves no purpose if the debtor is not aware of the amount necessary to accomplish the cure. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions"). Here, in addition to not being advised of the exact amount of money necessary to cure the default, Spivak was not advised of the time

or manner in which to pay, because Wells Fargo advised him to pay it at a time when it owned neither the note nor the mortgage. **See** Notes 1 and 2.[15]

Wells Fargo's reliance on **Fish v. Pennsylvania Housing Fin. Agency**, 931 A.2d 764 (Pa.Cmwlth.2007), is misplaced. As a Commonwealth Court opinion, **Fish** is not binding on this Court, and it addresses the requirements of Act 91 (rather than Act 6) before the General Assembly amended the required content of an Act 91 notice in 2008. Act 6 and Act 91 both relate to the notice requirements of a residential mortgagee seeking to institute a foreclosure action against a mortgagor.

Act 91 requires a mortgagee who desires to foreclose to send notice to the mortgagor "advis[ing] the mortgagor of his delinquency . . . and that such mortgagor has thirty (30) days to have a face-to-face meeting with the mortgagee who sent the notice or a consumer credit counseling agency to attempt to resolve the delinquency . . . by restructuring the loan payment schedule or otherwise." **Beneficial Consumer Disc. Co. v. Vukman**, 77 A.3d 547, 550 (Pa.2013) (quoting 35 P.S. § 1680.403c(a)-(b)(1) (emphasis added), *amended by* P.L. 841, No. 60, § 2 (July 8, 2008)). "[T]he purpose of an Act 91 notice is to instruct the mortgagor of different means he may use

---

[15] By way of illustration rather than limitation, what appears evident to us is that the height of overzealousness – the precise type of activity that the legislature enacted Act 6 to curb – is when a lender attempts to collect a debt it does not yet own, which is exactly what occurred in the instant matter. **See generally** 41 P.S. §§ 101 *et seq*.

to resolve his arrearages in order to avoid foreclosure on his property and also gives him a timetable in which such means must be accomplished." ***Wells Fargo Bank, N.A. ex rel. Certificate Holders of Asset Backed Pass-through Certificates Series 2004-MCWI v. Monroe***, 966 A.2d 1140, 1142 (Pa.Super.2009) (quoting ***Fish***, 931 A.2d at 767 (citing 35 P.S. § 1680.403c)).

Interpreting Act 91's pre-foreclosure requirements in ***Fish***, 931 A.2d at 767, the Commonwealth Court held that a mortgagee was not required to send the mortgagor a new Act 91 notice of default under the Homeowner's Emergency Mortgage Assistance Loan Program ("HEMAP") after withdrawing its initial foreclosure action. ***Id.*** The mortgagor espoused a similar argument to the one here, namely that "the [mortgagee] was required to send a new Act 91 Notice after the prior action in foreclosure was withdrawn by praecipe." ***Id.*** Rejecting this argument, the Commonwealth Court opined:

> The purpose of an Act 91 notice is to instruct the mortgagor of different means he may use to resolve his arrearages in order to avoid foreclosure on his property and also gives him a timetable in which such means must be accomplished. 35 P.S. § 1680.403c. Specifically, the Act 91 notice informs the mortgagor of the availability of financial assistance through HEMAP. 35 P.S. § 1680.403c(b)(1). Act 91 further states that if the mortgagor and mortgagee reach an agreement and thereafter the mortgagor is again unable to make payment, "[t]he mortgagee shall not be required to send any additional notice pursuant to this article." 35 P.S. § 1680.403c(d).

- 17 -

*Id.* Finding the mortgagee was not required to send another notice after withdrawing the first foreclosure action, the Commonwealth Court reasoned:

> . . . it does not follow that the Act 91 notice would have been withdrawn as well, as the **Act 91 notice merely places a mortgagor on notice that if the mortgagor does nothing, a foreclosure action will follow**. As [the mortgagor] had done nothing upon receipt of the Act 91 notice, it should not have been a surprise to him when the second foreclosure action was filed. The lender was not required to send any additional notice under Act 91.

*Id.* (emphasis added).

First, we note that the **Fish** holding, as a "decision[] by the Commonwealth Court[, is] not binding on this Court . . . ." **Little Mountain Cmty. Ass'n, Inc. v. S. Columbia Corp.**, 2014 PA Super 91, at *5 n. 14, –– A.3d ––– (Pa.Super.2014), *reargument denied*, July 8, 2014 (quoting **In re Barnes Foundation**, 74 A.3d 129, 134 n. 2 (Pa.Super.2013), *appeal denied*, ––– Pa. ––––, 80 A.3d 774 (Pa.2013)) (internal quotations omitted).

Second, an Act 6 notice—unlike an Act 91 notice in 2007 (when **Fish** was decided)—does more than place a mortgagor on notice that a foreclosure action will follow if the mortgagor does nothing; it contains more detailed notice requirements, *e.g.*, the exact amount owed to cure the default. Act 6's notice requirements are consistent with its "comprehensive statutory scheme . . . designed to avoid foreclosures" and its broader purpose to "offer[] homeowners with residential mortgages a measure of

- 18 -

protection from overly zealous residential mortgage lenders." ***Benner***, 917 F.Supp.2d at 357.

Third, ***Fish*** was decided **before** a 2008 amendment to Section 1860.403c(b)(1) of Act 91, which added a requirement that the Act 91 notice specify the amount of the default. ***See*** , P.L. 841, No. 60, § 2 (July 8, 2008) (inserting "including an itemized breakdown of the total amount past due" in Section 1860.403c(b)(1)). Therefore, it would now be impossible to comply with Act 91's notice requirements unless a lender sent a new notice.

Fourth, ***Fish*** notes that Section 1860.403c(d) of Act 91 states if the lender and debtor reach an agreement, and thereafter the debtor is again unable to make payment, another notice is not necessary. ***Fish***, 931 A.2d at 767 (quoting 35 P.S. § 1860.403c(d)). By its plain terms, Section 1860.403c(d) requires a prior agreement between a debtor and lender, a condition absent from the present case. ***See*** 35 P.S. § 1860.403c(d).

Fifth, the stated purpose of Act 91—to provide emergency mortgage assistance[16]—is markedly different from the purpose of Act 6—to offer homeowners with residential mortgages a measure of protection from overly zealous residential mortgage lenders. ***See Benner***, 917 F.Supp.2d at 357.

---

[16] ***See*** Preamble to P.L. 385, No. 91 (Dec.23, 1983) ("It is the purpose of this act to establish a program which will, through emergency mortgage assistance payments, prevent widespread mortgage foreclosures and distress sales of homes which result from default caused by circumstances beyond a homeowner's control").

Under the pre-2008 version of Act 91, once a lender notifies the debtor of the emergency mortgage assistance programs available, a second notice would not serve any useful purpose because the debtor is already on notice of the alternative financing options available. **See** 35 P.S. § 1860.403c; **Fish**, 931 A.2d at 767. On the other hand, if a lender withdraws a foreclosure action, it only makes sense that the Act 6 notice is likewise withdrawn, since the debtor would need a greater amount to cure a later default. **See** 41 P.S. § 403(c)(3) (requiring notice state exact amount needed to cure default).

In light of the foregoing, logic dictates that it is not only practical and reasonable to require a second notice, but necessary to effectuate the debtor's statutory right to cure the default under Act 6.[17] Accordingly, Wells Fargo was obliged to deliver a new Act 6 notice to Spivak before proceeding

_____

[17] On June 22, 2012, Governor Corbett signed into law Senate Bill 1433, which is commonly known as Act 70 of 2012 ("Act 70"). Section 5(1) of Act 70 states that the mortgagor must show that he or she was prejudiced by the mortgagee's failure to comply with Section 1860.402c and 1860.403c of Act 91 for the trial court to impose a remedy. Since this decision rests on our interpretation of Act 6, Act 70 does not pose an impediment to our disposition. Even if Act 70 did apply, it would not impact our holding. The prejudice that Spivak suffered from Wells Fargo's failure to furnish a second notice is palpable, most notably, from Spivak's inability cure the default by virtue of his lack of knowledge regarding the amount necessary to do so. Wells Fargo had a legal obligation to provide Spivak notice of the amount necessary to cure the default before instituting the foreclosure action. Without Wells Fargo fulfilling this obligation, Spivak was unable to take ameliorative action to prevent foreclosure.

with a second foreclosure action.[18] The trial court erred by overriding Act 6's notice requirement and interpreting Act 6 not to require an additional notice under these circumstances. ***See Roth***, 85 A.3d at 592-93 ("[I]f in reaching a conclusion the law is overridden or misapplied, . . .  discretion is abused[]").

Order ***reversed***. Case ***remanded***. Jurisdiction ***relinquished***.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/31/2014</u>

---

[18] Wells Fargo argues that requiring an additional notice under Act 6 would render Section 1680.403c(a) of Act 91 meaningless because notice under Act 91 satisfies the notice requirements of Act 6. ***See*** 35 P.S. § 1680.403c(b)(1). This is inaccurate.

Pursuant to Section 1680.403c(a) of Act 91, when both the Act 6 and Act 91 notices are required, it is sufficient to issue a combined Act 6/91 notice. ***See*** 35 P.S. § 1680.403c (authorizing a lender to issue a combined notice that contains the information required under Act 91 and Act 6). Section 1680.403c(a), however, does not govern when only an Act 6 notice is required.