**Wayne Bank v. Anstey**

C.P. of Lackawanna County, No. 14 CV 104

*Kimberly D. Martin,* for plaintiff.
*Mark J. Conway,* for defendants.

NEALON, *J.,* Nov. 17, 2014—On September 8, 2010, the chief justice of the Supreme Court of Pennsylvania directed the president judges of the county courts to consider creating mortgage foreclosure diversion programs "to effectively deal with the large number of foreclosure filings relating to single family residential properties, and to present a means by which these cases could be worked out by mutual agreement of the parties, when possible." Samuel W. Milkes, "Mortgage Foreclosure Division Programs: An Aid to Homeowners and Lenders — A case management tool for courts," 83 Pa.B.A.Q. 93, 94 (July

2012). The accompanying announcement that was issued by the Administrative Office of the Pennsylvania Courts stated that mortgage foreclosure mediation programs assist in "saving families' homes and helping lenders avoid the need to foreclose and take possession of property." *Id.* In June 2009, Lackawanna County implemented its Residential Mortgage Foreclosure Diversion Program ("the Diversion Program"), which "is designed to serve the dual purpose of keeping homeowners and their families in their homes while transforming nonperforming loans into performing loans again under terms that homeowners can realistically afford." *Wells Fargo Bank v. Okrah*, 2014 WL 68256, at *6 (Lacka. Co. 2014). Borrowers who opt to participate in the Diversion Program have the opportunity to participate in court-supervised conciliation conferences with their lenders in an effort to negotiate mutually agreeable loan modification agreements. *Id.* at *2. As part of a global resolution, lenders often agree to extend the term of the original loan and to spread the repayment of the total arrearages due over the additional monthly payments created by the extended term, and in the process, to allow lenders to recoup their past arrearages during the extended life of the loan while enabling compliant borrowers to remain in their homes. *See* James Haggerty, "court hopes to cut rising foreclosures," *The Times-Tribune*, February 28, 2009 at pp. Al, A8.

Defendants, Archie Anstey and Jane Anstey ("the Ansteys"), operated a 47-acre farm in Benton Township until Mr. Anstey became "severely disabled with a massive stroke" more than five years ago. (Transcript of Proceedings (T. P.) on 7/18/14 at p. 2; T. P. 8/21/14 at p. 2). Through a series of transactions in 2008 and 2009, the Ansteys purchased their current residence at 214 Willow Road, Dalton, for $257,500.00, sold their 47-acre farm for $255,000.00, and fully satisfied the original mortgage

on their Dalton home by July 24, 2009. (Instrument nos. 200828876, 200917101 and 2009191872 recorded in the Lackawanna County Recorder of Deeds Office). Since Mr. Anstey's ongoing healthcare treatment included aquatic therapy, the Ansteys explored the prospect of installing a small indoor rehabilitation pool in their mortgage-free home. (T. P. 7/18/14 at p. 2; T. P. 8/21/14 at p. 2). At that time, and continuing to the present, the Ansteys subsided on Social Security disability benefits as their sole means of income. (T. P. 7/18/14 at pp. 4-5; T. P. 8/21/14 at p. 10).

To finance the construction of their therapeutic aquatic facility, the Ansteys entered into a "line of credit" agreement with North Penn Bank on March 22, 2010, providing for advances up to $50,000.00. (Docket entry no. 1, Exhibit B). The line of credit contains a "draw period" of five years during which the Ansteys "may request advances," and a "repayment period" of twelve years. (*Id.* at ¶ 3). The North Penn Bank agreement requires monthly payments by the Ansteys from March 22, 2010, through March 21,2027, but does not itemize the exact amount of those variable interest monthly payments. (*Id.* at ¶ 13). The contract further states that North Penn Bank has "secured [the Ansteys'] obligations under this line of credit by taking a security interest...in...the dwelling and real property located at 214 Willow Road, Dalton, PA 18414," and that in the event of the Ansteys' default, North Penn Bank "may terminate this line of credit and make all or any part of the amount owing by the terms of this agreement immediately due." (*Id.*, at ¶¶ 18, 22). On March 22, 2010, the Ansteys also provided North Penn Bank with an "open-end mortgage" on their Willow Road property securing their repayment of their Line of Credit debt to North Penn Bank. (Docket entry no. 1, Exhibit A).

According to the mortgage foreclosure complaint that has been filed by plaintiff, Wayne Bank, the Ansteys

made 41 monthly payments of $532.43 per month from March 2010 to August 2013. (Docket entry no. 1 at ¶¶ 3, 7). Unfortunately, the Ansteys' son-in-law was diagnosed with Stage IV pancreatic cancer in 2013, and the Ansteys' daughter and son-in-law were required to move into the Ansteys' home due to their son-in-law's inability to work and concomitant need for constant care. (T. P. 7/18/14 at pp. 2-3; T. P. 8/21/14 at pp. 3, 10). As a result of that increased burden upon the Ansteys' limited financial resources, the Ansteys were unable to make their monthly mortgage payments in the fall of 2013. (*Id.*). After the Ansteys missed three mortgage payments on September 27, 2013, October 27, 2013, and November 27, 2013, totaling $1,597.29 in the aggregate, Wayne Bank forwarded an "Act 91 Notice" letter to the Ansteys on November 29,2013. (Docket entry no. 1, Exhibit C).

As conditions precedent to the commencement of a mortgage foreclosure action, the lender/mortgagee must furnish the borrower/mortgagor with mandatory notices in compliance with Act 91, the Homeowners Emergency Mortgage Act, 35 P.S. § 1680.402c *et seq.*, and the Loan Interest and Protection Law (Act 6), 41 P.S. § 101 *et seq.* Act 91 requires a mortgagee who desires to foreclose to send notice to the mortgagor "advising the mortgagor of his delinquency...and that such mortgagor has thirty (30) days to have a face-to-face meeting with the mortgagee who sent the notice or a consumer credit counseling agency to attempt to resolve the delinquency...by restructuring the loan payment schedule or otherwise." *Beneficial Consumer Discount Co. v. Vukman*, 621 Pa. 192, 198, 77 A.3d 547, 550 (2013) (quoting 35 P.S. § 1680.403c(a)-(b)(1)). Both the Superior Court and the Commonwealth Court have noted that "[t]he purpose of an Act 91 notice is to instruct the mortgagor of different means he may use to resolve his arrearages in order to avoid foreclosure on

his property and also gives him a timetable in which such means must be accomplished." *Wells Fargo Bank. N.A. v. Monroe*, 966 A.2d 1140, 1142 (Pa. Super. 2009) (quoting *Fish v. Pennsylvania Housing Fin. Agency*, 931 A.2d 764, 767 (Pa. Cmwlth. 2007)).

"An Act 6 Notice enables a financially troubled residential homeowner to learn exactly what sum of money is necessary to cure the mortgage default," *Wells Fargo Bank, N.A. v. Spivak*, 2014 WL 5493965, at *5 (Pa. Super. 2014), and "offers homeowners with residential mortgages a measure of protection from overly zealous residential mortgage lenders." *Id.* at *4 (quoting *In re Graboyes*, 223 Fed. Appx. 112, 114 (3d Cir. 2007)). "Remedies for a defective Act 6 notice include setting aside the foreclosure or denying a creditor the ability to collect an impermissible fee." *Id.* "[T]he stated purpose of Act 91 — to provide emergency mortgage assistance — is markedly different from the purpose of Act 6 — to offer homeowners with residential mortgages a measure of protection from overly zealous residential mortgage lenders." *Id.* at *8. Nevertheless, "when both the Act 6 and Act 91 notices are required, it is sufficient to issue a combined Act 6/91 notice." *Id.* at n.18 (citing 35 P.S. § 1680.403c).

The only pre-filing notice contained in the court record is Exhibit "C" to Wayne Bank's foreclosure complaint, which is comprised of pages 1, 2 and 5 of Wayne Bank's letter to the Ansteys on November 29, 2013. (Docket entry no. 1, Exhibit C). Based upon the limited number of pages provided, it cannot be determined whether Wayne Bank fully complied with Act 91 by furnishing the information required by 35 P.S. § 1680.403c. Moreover, the three pages of Exhibit C do not reflect that *any* Act 6 notice was provided as mandated by 41 P.S. § 403. Absent proof of that statutorily required notice, Wayne Bank may not

foreclose upon the Ansteys' Willow Road property. *See Spivak, supra,* at *4.

Once the Ansteys allegedly failed to make a fourth mortgage payment on December 27, 2013, and became $2,129.72 in arrears, Wayne Bank instituted this mortgage foreclosure action by the filing of a complaint on January 6, 2014. (Docket entry no. 1 at ¶ 7). Under Pennsylvania Rule of Civil Procedure 1147(a)(1), a mortgage foreclosure complaint must set forth "the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments." Pa.R.C.P. 1147(a)(1). Additionally, "[c]opies of such assignments must be attached to the complaint, or incorporated by reference if recorded." 4 Goodrich Amram 2d § 1147(1): 2 (Sept. 2014). Furthermore, "[i]f the mortgage is a residential mortgage under Act No. 6 of 1974, 41 P.S. § 101, the complaint should set forth an averment of compliance with the provisions of Section 403 of Act No. 6,41 P.S. § 403." Pa.R.C.P. 1147(a)(6), Official Note.

Wayne Bank's complaint baldly avers that "Wayne Bank, assignee of North Penn Bank ("Bank"), is a Pennsylvania corporation with its principal offices at 717 Main Street, Honesdale, PA 18431." (Docket entry no. 1 at ¶ 1). Wayne Bank does not (a) identify itself as the "legal owner" of the Ansteys' mortgage, (b) describe the date and place of record of the mortgage assignment, or (c) alternatively aver that it is unable to attach the assignment to the complaint pursuant to Pa.R.C.P. 1019(i) since the parties are in the process of formalizing the assignment. *See U. S. Bank N. A. v. Mallory,* 982 A.2d 986, 992-993 (Pa. Super. 2009) ("fatal defect" warranting striking of default judgment did not exist since mortgage assignee averred that it "is now the legal owner of the mortgage and is in the process of formalizing an assignment of

same," and that the mortgage and assignment "are matters of public record and are incorporated herein by reference in accordance with Pa.R.C.P. 1019(g)."). To compound the apparent assignment deficiency further, the complaint alleges that "[t]he said Mortgage has not been assigned." (Docket entry no. 1 at ¶ 4). Moreover, although Wayne Bank's complaint references the "mortgage dated March 22, 2010," it avers in the same paragraph that "[o]n March 22, 2011. [the Ansteys] executed and delivered a note in the principal amount of fifty thousand and 00/100 ($50,000.00) dollars payable in monthly installments of five hundred thirty-two and 43/100 ($532.43) dollars per month...." (Docket entry no. 1 at ¶ 3) (emphasis added). Needless to say, a mortgage which pre-dates the secured debt by one year is fraught with enforcement issues. *See Courtney v. Ryan Homes. Inc.*, 345 Pa. Super. 109, 117, 497 A.2d 938, 942 (1985) ("A mortgage and an accompanying note are separate obligations," and "[t]he note is evidence of the debt; and the mortgage provides collateral security for the debt.").

In its sole reference to a pre-filing notice, the mortgage foreclosure complaint states that "Notice of the Emergency Assistance Act of 1983 Housing Bill No. 500, Act 91, and notice of intent to foreclose were sent by [Wayne Bank] to the [Ansteys], copies of which are attached hereto, made a part hereof and labeled Exhibit 'C.'" (Docket entry no. 1 at ¶ 8). This averment does not reference any compliance with the statutory notice required by Act 6, 41 P.S. § 403, even though the official note to Rule 1147(a)(6) expressly states that a residential mortgage foreclosure "complaint should set forth an averment of compliance with the provisions of Section 403 of Act 6, 41 P.S. § 403." Nor do the three pages of Wayne Bank's letter dated November 29, 2013, which are attached to the complaint as Exhibit "C," make any reference to Act 6 or its required notice.

(Docket entry no. 1, Exhibit C at pp. 1,2, 5).

Wayne Bank's complaint does aver that as a result of the Ansteys' failure to make four loan payments totaling $2,129.72, Wayne Bank accelerated "the entire debt due" and demanded judgment in the amount of $51,148.23, comprised of principal of $49,570.21, interest of $815.96, and late charges of $762.06. (Docket entry no. 1 at ¶¶ 9-10). The prayer for relief in the mortgage foreclosure complaint not only seeks a monetary judgment against the Ansteys in the amount of $51,148.23, but also demands judgment "in mortgage foreclosure" so as to enable Wayne Bank to sell the Ansteys' residential property to satisfy the outstanding debt. (*Id.* at p. 3). After Wayne Bank served the mortgage foreclosure complaint upon the Ansteys on January 22, 2014, and thereafter filed a notice of praecipe to enter judgment by default, Wayne Bank sought and secured the entry of a default judgment against the Ansteys in the amount of $51,148.23 on March 27, 2014. (Docket entry nos. 2-4).

Once the default judgment was entered, the Ansteys retained counsel on a pro bono basis, (T. P. 8/21/14 at p. 2), who promptly filed a request on April 21, 2014, seeking a conciliation conference under the diversion program. (Docket entry no. 5). The conciliation conference was originally scheduled for June 13, 2014, but was continued to July 18, 2014, at the request of Wayne Bank. (Docket entry nos. 6-7). During the initial conciliation conference, the Ansteys' counsel reported that the Ansteys' son-in-law had died on July 17, 2014, at age 42, such that the Ansteys were unable to attend the conference. (T. P. 7/18/14 at p. 2). Noting that the Ansteys' aggregate arrearages as of that date were merely $5,324.30, and that the value of the Ansteys' home was between $250,000.00 and $300,000.00, the undersigned scheduled this matter for another conciliation conference on August 21, 2014, and

directed the Ansteys' counsel to determine whether there was any life insurance applicable to the son-in-law which could provide funds to satisfy the Ansteys' arrearages. (*Id.* at pp. 2, 5-9).

In anticipation of the second conciliation conference, Wayne Bank filed a status report on August 6, 2014, in which it stated that "[Wayne Bank] has reviewed all the documents that were previously submitted by the [Ansteys] and is not currently offering a loan modification." (Docket entry no. 9). At the second conference, the Ansteys' counsel reported that there was no life insurance coverage for the son-in-law's death, but that the Ansteys' daughter had retained separate counsel who had filed a social security disability claim on her behalf. (T. P. 8/21/14 at pp. 3-4). Since the Ansteys had made 41 monthly payments before their default, such that there original loan was capable of being extended for several additional years, the undersigned recommended that Wayne Bank "put the arrears on the back end" and extend the term of the original note to incorporate additional, but affordable, payments that would ultimately make the Bank whole. (*Id.* at p. 6). However, Wayne Bank's counsel replied that Wayne Bank was "not willing to do that." (*Id.*). The Ansteys' counsel alternatively suggested that the Ansteys "make three monthly payments" immediately, that Wayne Bank stay the foreclosure proceedings for three months, and that the parties return for another conciliation in late November 2014 to determine whether the Ansteys' daughter had been awarded social security disability benefits, such that the Ansteys would be "able to reinstate the mortgage" by paying all past arrears. (*Id.* at p. 7).

By order dated August 21, 2014, a third conciliation conference was scheduled for October 31, 2014, and Wayne Bank was directed to submit a status report by October 17, 2014. (Docket entry no. 10). In its status

report of October 17, 2014, Wayne Bank again stated that it "has reviewed all the documents that were previously submitted by the [Ansteys] and is not agreeable to a loan modification." (Docket entry no. 13). During the ensuing conference, Wayne Bank's counsel indicated that although the Ansteys' total arrearages to date were $7,454.02 (14 monthly payments x $532.43/month), with late charges and counsel fees, "the total amount due is $10,736.08." (T. P. 10/31/14 at p. 5). The undersigned once again suggested that the Bank extend the remaining line of credit repayment term by twenty months as a means of repaying the arrearages (i.e., 20 additional payments of $532.43/month) and resuming the Ansteys' monthly loan payments. (*Id.* at pp. 5-6). In response. Wayne Bank's counsel replied that "[t]he bank isn't willing to modify," prompting the undersigned to state "I'm at a loss to understand" why Wayne Bank is "not willing to do what every other local lender I've ever had any experience with [in the diversion program] is willing to do" in order to resolve a mortgage foreclosure dispute. ("*Id.* at pp. 7-8). Consequently, another conciliation conference was scheduled for November 21, 2014, and Wayne Bank's Vice President of Residential Lending, John Saunders, was ordered to attend the conference in person pursuant to Lacka. Co. R.C.P. 1143.1(e). (Docket entry no.11).

Wayne Bank's website represents to the public that "Wayne Bank takes pride in still having the friendly personal touch that has been our hallmark [since] when we began as a simple storefront operation in 1871." (*See* https://www.waynebank.com/index.php/about-us). In light of the ostensible defects in Wayne Bank's mortgage foreclosure complaint with respect to (a) averments of the place of record of the relevant assignment of the Ansteys' mortgage to Wayne Bank, (b) the attachment of any such assignment to the complaint or its incorporation

by reference if recorded, (c) compliance with the notices mandated by Act 6 and Act 91, and the (d) erroneous averment of the date of the line of credit agreement, Wayne Bank should be "willing to modify" the Ansteys' indebtedness in fulfillment of its self-proclaimed "friendly personal touch." *See* David R. Greenberg, "Neglected Formalities in the Mortgage Assignment Process and the Resulting Effects on Residential Foreclosures," 83 Temp. L. Rev. 253 (Fall 2010). Yet, when Wayne Bank filed its latest status report on November 7, 2014, it once again stated that it "is not agreeable to a loan modification." (Docket entry no. 14).

Based upon the foregoing, and in accordance with Lacka. Co. R.C.P. 1143.1(e), it is imperative that a duly authorized financial representative of Wayne Bank attend the conciliation conference on November 21, 2014, to show cause why, in light of the foregoing issues involving its pleadings and consequent default judgment, Wayne Bank deems it necessary to expose a residential property, which is valued between $250,000.00 and $300,000.00, to a sheriffs sale to satisfy 14 delinquent monthly payments totaling $7,454.02. For that reason, Wayne Bank's Executive Vice President, Chief Financial Officer and Secretary, William S. Lance, will be ordered to attend the conciliation conference on November 21, 2014, at 1:30 PM.

And now, this 17th day of November, 2014, it is hereby ordered and decreed that:

1. William S. Lance, Executive Vice President, Chief Financial Officer and Secretary of Wayne Bank, shall attend the conciliation conference on Friday, November 21, 2014 at 1:30 PM, with complete authority to negotiate a loan modification agreement with the defendants, as required by Lacka. Co. R.C.P. 1143.1(e); and

2. Since William S. Lance is being directed to attend the conciliation conference as the designated representative of Wayne Bank pursuant to Lacka. Co. R.C.P. 1143.1(e), it is unnecessary for John Saunders to attend, and for that reason, paragraph no. 2 of the order dated October 31, 2014, is vacated.