575 A.2d 615

**LANARD & AXILBUND, INC.**

v.

**Joseph MUSCARA & Lorraine Muscara and Tucker Realty, Inc.**

**Appeal of Joseph MUSCARA and Lorraine Muscara.**

Superior Court of Pennsylvania.

Argued March 14, 1990.

Filed May 23, 1990.

David L. Narkiewicz, Lansdale, for appellants.

Ben W. Joseph, Philadelphia, for appellee.

Before ROWLEY, BECK and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The instant action was instituted by plaintiff-appellee Lanard & Axilbund, Inc. (hereinafter "Lanard"), a real estate broker, to recover commissions allegedly due in connection with several leases. Defendant-appellants Joseph and Lorraine Muscara (hereinafter referred to as "Muscaras"), at all times material herein, have been the owners of the Jacksonville Road Industrial Park, which is the site where the leases had application. Defendant-appellee, Tucker Realty, Inc. (hereinafter referred to as "Tucker"), which was another real estate broker, was involved in some of the transactions giving rise to the litigation. After a non-jury trial, the lower court ordered that the Muscaras pay plaintiff-appellee commissions in the amount of $197,-250.66, plus interest, which the court computed in the amount of $11,835.04. Further, the trial court ordered that the Muscaras promptly pay all future commissions based upon rents received from two named tenants during applicable renewals of their leases. Finally, it was ordered that Lanard be paid six percent of the gross sales price in the event that a particular tenant would purchase particular lots in the industrial park, in accordance with lease agreements involved in the case. Finally, the trial court determined that Lanard was not entitled to any recovery against Tucker. After the denial of post-verdict motions, the instant appeal was filed.

The record shows that in approximately 1971, Don Rosen, then an agent on the staff of Lanard, approached Mr. Muscara and requested the opportunity for Lanard to act as an exclusive rental agent for the Jacksonville Road Industrial Park. Mr. Muscara testified he had interviewed a number of real estate brokers to solicit tenants, collect rents, and handle other property management tasks. He chose Lanard as the exclusive real estate agent for the industrial park based solely upon his conclusion that Rosen would be capable in carrying out the intended responsibilities.

From the testimony of Rosen and Mr. Muscara, it appears that during 1971 and early 1972, they had numerous contacts in regard to Lanard's representation of the Muscaras. Rosen told Muscara that the leases Lanard would negotiate for the benefit of the Muscaras would obligate them to pay Lanard a six percent commission on the rentals as compensation for obtaining and dealing with the tenants. Among other features of the agency relationship which Rosen explained to Muscara was the understanding that a so-called buyout arrangement would be included in all of the leases which would be negotiated by Lanard, in order to allow the Muscaras, at any time, to terminate Lanard as their agent for a single lump sum payment. On behalf of Lanard, Rosen represented that this buyout arrangement was a standard provision that Lanard made available in its commercial leases. The buyout terms provided that if the Muscaras elected to exercise such an option during the original term of the lease, commissions would be due Lanard for all remaining years of the original term at a rate of six percent of rentals for the first year following the buyout, five percent for the second year, and four percent for all subsequent years of the original term following the buyout, plus a payment at the rate of four percent per annum for the greater of either five years, or the length of the original term of the lease where it was extended beyond its original term. This provision was included in the leases which Lanard obtained from tenants for the Muscaras for several years after that time. It is central to the issues in dispute in this case.

Further, in soliciting the Muscaras on behalf of Lanard, Rosen explained to Mr. Muscara that the leases contained provisions which would require the Muscaras to pay sales commissions to Lanard if any of the leased properties were sold to the lessees. However, he represented that such provisions would be ineffective if a buyout had previously been effectuated by the Muscaras with respect to such properties. The initial Lanard leases entered into evidence

during the trial proceedings included such a sales commission arrangement for Lanard if the properties were sold.

Rosen was the only representative of Lanard with whom the Muscaras dealt prior to December, 1976, when Rosen left the employ of Lanard. Before departing this employment, however, Rosen had begun to negotiate a lease with Communications Concepts, Inc. (hereinafter referred to as "CCI"), for space in the Jacksonville Road Industrial Park. There was testimony that during such negotiations, Rosen had explained to Mr. Muscara that the provisions of the original draft of the lease were identical to those in the previously described standard Lanard leases.

Subsequently, several months after Mr. Rosen had left the employ of Lanard, and after additional negotiations between Lanard and CCI, Lanard presented the Muscaras with a revised lease which had been executed by CCI. Lanard's attorney met with Mr. Muscara to point out various negotiated changes in the revised lease. However, the attorney did not discuss the fact that the buyout clause had been eliminated from the lease.

In a subsequent letter from the same attorney, Lanard suggested that Mr. Muscara read the lease very carefully as there were some provisions which it would not ordinarily recommend to its clients. Further, the attorney suggested that it would be in Mr. Muscara's best interest to have the lease reviewed by his own attorney. In an additional communication to the Muscaras from Lanard's attorney concerning the CCI lease, 23 different points regarding negotiated provisions of the new lease were highlighted and discussed. In this letter, Mr. Muscara was again strongly urged by Lanard to have the document reviewed by an attorney of his own choice. Although Lanard pointed out numerous concerns regarding the lease and a great number of changes in it from the standard lease which had theretofore been employed in rental arrangements secured by Lanard on behalf of the Muscaras, Lanard's attorney did not direct attention, in either of these letters, to the fact that the lease contained modified terms relating to its own

understanding with the Muscaras. In that regard, Lanard again did not bring to the attention of the Muscaras that it had eliminated the buyout provision from the leases.

On March 23, 1977, the Muscaras signed the CCI lease which had been sent to them by Lanard. The lease provided that the Muscaras were obligated to pay Lanard a commission of six percent on all rental payments collected from CCI. The agreement also specified that Lanard would also be entitled to receive a six percent commission on further CCI rentals if CCI leased other space in the same building or any contiguous or adjacent property in the industrial park. At trial, Mr. Muscara represented that he had never read the lease documents which he signed, relying on the good faith of Rosen and Lanard. He portrayed himself as a builder who worked all day at his construction tasks, and testified he maintained no business office, and did not employ an attorney.

After leaving Lanard, Donald Rosen became an agent of defendant-appellee Tucker Realty, Inc. In that capacity, he continued to deal with the Muscaras regarding the industrial park. On separate occasions between 1978 and 1988, Rosen arranged for CCI to lease seven additional properties in the industrial park. Such properties were leased through Tucker. The Muscaras authorized Tucker to deduct nine percent of the rentals collected from the additional CCI leases. Tucker was to retain three percent for itself and transmit six percent to Lanard, consistent with the commission provisions of the 1977 CCI lease. Tucker confirmed this arrangement in writing to Lanard. In that context, Tucker was acting as the agent for the Muscaras in dealing with Lanard.

In May, 1977, Lanard negotiated a lease for additional space in the Jacksonville Road Industrial Park with a tenant named Delvco Industries, Inc. (hereinafter referred to as "Delvco"). The lease with Delvco contained the same commission arrangements as the 1977 CCI lease. The leasehold interest of Delvco was known as lot 2. Subsequently, on February 20, 1981, and again on November 5, 1986, Delvco

renewed its original lease for a period of five years, with the same commission provisions. Further, after its original lease was effectuated in 1977, Delvco leased two additional properties within the industrial park. On August 16, 1983 it leased lot 1, section 3 and on May 10, 1988, it leased lot 1, section 1.

From March, 1977 through October, 1982, Lanard received all of the six percent commissions it was due from the CCI leases and from the original Delvco lease for lot 2. In late 1982, the Muscaras expressed a desire to buy out all of their commission obligations to Lanard. Lanard refused to agree to the proposed buyout arrangement, and maintained that the lease agreement specified that in the event that a lessee provided by Lanard purchased a leased property, Lanard would be entitled to receive a six percent commission on the gross sales price, in addition to an amount representing commissions for the remainder of the lease term pursuant to the payout schedule of rental commissions. Thus, in addition to the six percent commission on the sales price, Lanard insisted that it would be entitled to the six percent of the rentals during the first year after termination of its rights, five percent of the minimum rental for the second year after such date, plus four percent of the minimum rental for the balance of the term and all renewals and extensions of the occupancy by the particular lessee.

At the beginning of November, 1982, Mr. Muscara instructed Rosen and Tucker to cease all commission payments to Lanard on the CCI leases which had been negotiated by Rosen with CCI for additional space in October, 1978 and September, 1981, after he had left Lanard. Further, the Muscaras, Tucker and Rosen did not remit any payment to Lanard representing commissions on the Delvco leases which were negotiated in August, 1983 and May, 1988, for additional spaces in the industrial park.

Lanard has continued to receive a six percent commission under the 1977 leases with CCI and Delvco, which remained in effect without interruption from 1977 up to the date of the trial. However, since 1982, Lanard has received no

commissions with regard to any of the leases for additional spaces which Rosen negotiated with CCI and Delvco after he left Lanard and joined Tucker.  It is noteworthy that the form of lease used by Tucker in the post–1977 CCI and Delvco leases contained provisions which could be construed to give the Muscaras buyout rights with respect to such leases.

The trial court concluded that the Muscaras repudiated and breached their obligations to Lanard under the 1977 lease agreements with CCI and Delvco.  The court found the language in the leases to be clear and unambiguous in obligating the Muscaras to pay specific commissions.  It was found that Rosen and Tucker were acting as the authorized agents of the Muscaras in the leasing of additional properties in the industrial park, and in that capacity, Rosen and Tucker signed agreements which entitled Lanard to rental and sales commissions.  Based on such determinations, the trial court issued its order for money damages in favor of Lanard and against the Muscaras, and further required that the Muscaras pay all future commissions based upon renewals of leasehold interests by CCI and Delvco, in compliance with the applicable agreements.  In the event that CCI would elect to purchase the lots covered by the 1978 and 1981 leases, the Muscaras were ordered to pay Lanard six percent of the gross sales price.  Finally, the trial court determined that Tucker was not a party to any agreement providing any payment from it to Lanard, except as an agent of the Muscaras.  Accordingly, the trial court declined to enter any award against Tucker on Lanard's claims.

In their appeal to our court, the Muscaras raise five separate arguments.  First, they maintain that the trial court erred in failing to find that appellee Lanard had breached fiduciary duties to the appellants in that Lanard had allegedly neglected to provide full disclosure to them and had acted in bad faith in the agent or broker relationship it had with them.  Second, Lanard argues on appeal that the trial court improperly failed to find that Lanard

had either fraudulently misrepresented or concealed changes in the lease documents which provide the basis for the commission claims which Lanard asserted in this case. The fourth contention raised by the appellants in support of their appeal is that the trial court erred in failing to find that pertinent language in the leases, concerning the commissions payable, were the result of a mutual mistake. Our review of the record reveals that in the appellants' Amended Answer and New Matter, filed in response to the plaintiff's Amended Complaint, the Muscaras raised claims that Lanard had breached its fiduciary duties, and was guilty of self-dealing and misrepresentation of its role in the transactions. Moreover, the Muscaras alleged that Lanard and its agents materially misrepresented the terms and conditions of the leases with regard to the liability for payment of commissions, and that said representations were relied upon by the Muscaras. Finally, the issue of mutual mistake was also raised by the appellants in their Amended Answer and New Matter.

Our review of the record in this case indicates that some evidence offered by the appellants at trial could be construed as having been submitted in support of the breach of fiduciary responsibility, misrepresentation, mutual mistake and related contentions again presented on this appeal by the appellants. In appellants' post-trial motions, they again specifically referred to such arguments.

However, the trial court, in findings of fact and opinions it prepared in connection with its disposition of this case, has failed to include any reference to such issues. Accordingly, our court has no basis for determining whether the lower court addressed such contentions, or, if it did, on what basis it rejected such claims.

It is clear that where disputed facts must be resolved, appellate courts should refrain from assuming the role of a fact finder, either to sustain or to reverse the action of the court below. *Bearoff v. Bearoff Brothers, Inc.*, 458 Pa. 494, 327 A.2d 72 (1974). It is inappropriate for

the Superior Court to make factual determinations based upon conflicting evidence. *Thomas A. Armbruster, Inc. v. Barron,* 341 Pa.Super. 409, 491 A.2d 882 (1985). When the resolution of an issue is significant in the determination of an appeal, an appellate court should not attempt to substitute its judgment as a fact finder, but rather, should remand the matter to the trial court or other fact finder which considered the evidence pertinent to the critical questions presented. *Big Knob Volunteer Fire Company v. Lowe & Moyer Garage, Inc.,* 338 Pa.Super. 257, 487 A.2d 953 (1985).

Accordingly, we deem it necessary to order a remand in this case to permit the trial court to consider the issues of breach of fiduciary responsibility, misrepresentation, mutual mistake, and related claims raised by the appellants. Although we may surmise that the trial court considered and rejected such contentions by the Muscaras, the lack of any reference to the subject matter of such claims in the trial court's findings and opinions does not afford us any basis for reaching a clear conclusion in that regard.

Because it is possible that the trial court may have failed to consider such contentions, in part or in whole, when the trial court considers them on remand, it could determine that a different outcome is appropriate in this case. Therefore, it would not be appropriate for our court to retain jurisdiction of this case pending remand. However, our disposition should not be considered in any manner to be a suggestion to the trial court with respect to its disposition of the issues noted. We have not considered the merits of the appellants' fiduciary, misrepresentation, mistake or other related claims and arguments. If any party has a desire to bring this dispute before our court after this remand and a disposition of these issues by the trial court, a new appeal must be filed.

This case is remanded to the trial court for further consideration of the issues discussed herein. Jurisdiction is not retained.