J-A13015-17

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| JP MORGAN CHASE BANK N.A. (SUBSTITUTED PLAINTIFF, GREAT AJAX OPERATING PARTNERSHIP, LP) | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNETH J. TAGGART | |
| Appellant | No. 470 EDA 2016 |

Appeal from the Judgment Entered February 22, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 03473 July Term 2013

BEFORE:  LAZARUS, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 25, 2017**

Kenneth J. Taggart appeals from a judgment entered in favor of Great Ajax Operating Partnership, LP ("Great Ajax") in this mortgage foreclosure case.  After careful review, we affirm.[1]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Taggart has filed a "Motion to Take Judicial Notice," which we grant.  We note that **Wells Fargo Bank, N.A. v. Spivak**, 104 A.3d 7 (Pa. Super. 2014), is distinguishable, and it is on this reasoning that we have disposed of that Act 6 notice issue.  **See infra**, at 6-9.  We also note that Taggart has filed a post-submission communication, **see** Pa.R.A.P. 2501, titled "Motion for `Fraud on the Court' or Review `Findings of Fact' for Abuse of D[i]scretion & Bias."  We deny this motion.  We caution counsel that we do not take lightly allegations of fraud against a public official, in particular unsupported allegations of "bias and fraud" by the trial court.  Counsel misapprehends the concept of zealous advocacy.  **See** Pa.R.Prof.Conduct, Preamble and Scope; **see also** Pa.R.Prof.Conduct 3.1  ("A lawyer shall not
*(Footnote Continued Next Page)*

On July 20, 2005, Taggart executed a promissory note ("Note") and Mortgage on the property at 7242 Saul Street, Philadelphia, PA 19149, in consideration of his borrowing $120,000 from Chase Bank, USA, N.A. ("Chase"). Both the Note and Mortgage were recorded in the office of the Philadelphia County Recorder of Deeds. On February 29, 2012, Chase assigned the Mortgage and Note to "JP Morgan Chase Bank, N.A." ("Morgan"). The assignment was recorded on March 8, 2012 in the office of the Philadelphia County Recorder of Deeds.[2]

On September 19, 2013, the rights and interest in the Mortgage were again assigned to "Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC." The assignment was also recorded on February 19, 2014 in the office of the Philadelphia County Recorder of Deeds.

On January 16, 2015, the rights and interest in the Mortgage were again assigned to "OHA Newbury Ventures, L.P." On the same day, the rights and interest in the Mortgage were again assigned to Great Ajax. Both assignments were also recorded on February 23, 2015, in the office of the Philadelphia County Recorder of Deeds.

_(Footnote Continued)_ ─────────────

. . . . assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous[.]").

[2] We note that the _first_ complaint filed by Chase on September 10, 2010 was dismissed without prejudice by Judge Fox on February 3, 2011. Chase filed a new complaint in foreclosure on July 26, 2013. **See** discussion, **_infra_** at pp. 6-9.

Taggart defaulted under the Mortgage and Note by failing to make payments due March 1, 2009, and each month thereafter. Chase issued a combined Act 6[3]/Act 91[4] Notice (Notice) to Taggart, dated April 22, 2010. Morgan filed its complaint in mortgage foreclosure against Taggart on July 26, 2013. On October 29, 2013, Taggart filed an answer to the complaint.

The Honorable Kenneth J. Powell Jr. held a bench trial in this matter on May 27 and 28, 2015. Judge Powell, after receiving post-trial briefs, rendered a verdict for Great Ajax on November 25, 2015. Judge Powell denied Taggart's post-verdict motions on January 6, 2016, and Taggart filed a notice of appeal that same day.[5] Taggart filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on January 26, 2016.

Taggart raises the following issues on appeal:

1. Whether the trial court erred in finding that the Act 6/91 notice was not defective for failure to comply with statutory laws and contractual obligations.

2. Whether trial court erred in finding that the original Plaintiff, J.P. Morgan Chase Bank N.A., had possession of the original note at the time the foreclosure was filed, or subsequent Plaintiffs when they were substituted as Plaintiff.

---

[3] 41 P.S. § 403(b).

[4] 13 Pa.C.S. § 3205(b).

[5] Taggart filed a subsequent notice of appeal on February 4, 2016.

3.      Whether the trial court erred in finding that, OHA Newbury, Ventures, L.P., did not need to be substituted as Plaintiff when it alleged ownership since the foreclosure was filed.

4.      Whether the trial court erred in finding that, Great Ajax Operating Partnership, L.P. was a "Party Entitled to Enforced the Note", a "Holder of the Note", or a "Holder in Due Course", pursuant to The Pennsylvania Uniform Commercial Code Article #3.

5.      Whether the trial court erred *in finding that, the note at trial was not destroyed* when evidence at trial and testimony indicated a missing, "an allonge", endorsing the note to Ventures Trust-2013-I-H-R., or destroyed as the note was *permanently affixed together by stable or other means, was in separate pieces, and held together only by a paper.*

6.      Whether the trial court erred in finding that, the signature page #3 of the note was <u>not</u> clearly forged, <u>and was not the original signature of Defendant.</u>

7.      Whether the trial court erred by: not including Defendants, August 10, 2015, response to Plaintiff's Brief, filed July 17, 2015, when the court entered a verdict in favor of Defendant.

8.      Whether the trial court erred in finding that: "The Note" presented at trial was the original note.

9.      Whether the trial court erred in finding that, the assignment of mortgage, dated February 19, 2014, from: J.P Morgan Change Bank to Ventures Trust 2013-I-H-R, was valid.

10.    Whether the trial court erred in finding that, the assignment of mortgage, dated February 23, 2015, from: Ventures Trust 2013-I-H-R to OHA Newbury Ventures, L.P., was valid.

11.    Whether the trial court erred in finding that, the assignment of mortgage, dated February 23, 2015, from: OHA Newbury Ventures, L.P. to Great Ajax Operating Partnership, L.P, was valid.

12.    Whether the trial court erred in finding that, the mortgage did not follow the note invalidating the mortgage and note as they are inseparable.

13.    Whether the trial court erred in finding that, there was a witness [at trial] with personal knowledge of the case to support a, payment history, loan, history, and balance, on the loan.

14.    Whether the trial court erred in finding to cite that the case was not prosecuted by The Real party of Interest at all times during the course of the litigation.

15.    Whether the trial court erred in failing to cite improper substitution, on February 23, 2015, of Great Ajax Operating Partnership, L.P. pursuant to: Rule 2351 & Rule 2352.

16.    Whether the trial court erred in not citing Defendants defenses pursuant to: Pennsylvania Uniform Commercial Code, 3309 (a) & (b) & §305(a),(b), & (c).

17.    Whether the trial court erred in denying, the Defendant's Motion to Re-Open Discovery, filed March 16, 2015.

18.    Whether the trial court erred in denying, "Motion to Take Judicial Notice", filed October 28, 2015.

Appellant's Brief, at 2-8.[6]

_____

[6] As an initial matter, we observe Taggart's brief on appeal to contain many substantial defects, hampering appellate review of his claims. Despite the assistance of counsel, much of Taggart's brief is incoherent, and although the overall structure conforms to the Rules of Appellate Procedure, the body of each section does not. For example, Taggart's statement of the case contains significant instances of argument, in contravention of Pa.R.A.P. 2117(b). "When a party's brief fails to conform to the Rules of Appellate Procedure and the defects are substantial, this Court may, in its discretion, quash or dismiss the appeal pursuant to" Pa.R.A.P. 2101. *Giant Food Stores, LLC v. THF Silver Spring Development, L.P*., 959 A.2d 438, 443 (Pa. Super. 2008). Although we do not quash Taggart's appeal on procedural grounds, we find all of the issues he raises are meritless.

Our standard of review of a judgment arising from a non-jury trial is whether the trial court abused its discretion. *Bensinger v. Univ. of Pittsburgh Med. Ctr.*, 98 A.3d 672, 682 (Pa. Super. 2014). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Parr v. Ford Motor Co.*, 109 A.3d 682, 690-91 (Pa. Super. 2014). We must consider the evidence in a light most favorable to the verdict winner. *Allegheny Cty. Hous. Auth. v. Johnson*, 908 A.2d 336, 340 (Pa. Super. 2006). We may not make factual determinations merely in the face of conflicting evidence. *Nicholas v. Hofmann*, 158 A.3d 675, 689 (Pa. Super. 2017) (quoting *Lanard & Axilbund, Inc. v. Muscara*, 575 A.2d 615, 619 (Pa. Super. 1990)). "Where the issue concerns a question of law, our scope of review is plenary." *Bank of N.Y. Mellon v. Bach*, 159 A.3d 16, 19 (Pa. Super. 2017).

Only one of Taggart's 18 issues possibly has merit. That issue challenges the validity of the Notice sent to Taggart prior to Morgan initiating the foreclosure action. *See* Appellant's Brief, 8/1/2016, at 17-20. Judge Powell interprets this issue as "alleging Great Ajax violated the Act 6 and Act 91 notice requirements by failing to send a second notice after it was substituted as Plaintiff." Trial Court Opinion, 2/26/2016, at 6. Judge Powell's interpretation of the claim is incorrect.

Numerous times throughout the protracted course of this litigation, Taggart contended, although haphazardly and incoherently, that the Notice failed to conform to the requirements of Act 6 and Act 91 because it was sent prior to an earlier foreclosure action initiated by Chase in the Philadelphia County Court of Common Pleas docketed September 2, 2010 under Case No. 10-08-04848. **See** Defendant's Preliminary Objections to the Complaint, 4/21/2013, at 2-4; **and see** Defendant's Preliminary Objections to the Praecipe for Substitution, 3/16/2015, at 2-6; **and see** Defendant's Motion to Take Judicial Notice, 3/16/2015. The Honorable Judge Idee C. Fox dismissed, on February 3, 2011, the original complaint filed by Chase on September 10, 2010, after Chase failed to answer Taggart's preliminary objections. **See** Defendant's Preliminary Objections to the Complaint, 4/21/2013, at Exhibit C. Chase then filed another complaint in foreclosure on July 26, 2013.

At its heart, Taggart's argument is that because Chase's original action failed, Morgan had to send a new notice at least 30 days prior to the filing of the instant action. **See Wells Fargo Bank N.A. v. Spivak**, 104 A.3d 7, 10 (Pa. 2014). The case upon which Taggart relies is distinguishable from the facts here for the plain and simple reason that Chase's earlier action was *not* voluntarily discontinued, and was refiled by the same entity five months later, before the note was assigned.

The Loan Interest and Protection Law, 41 P.S. §§ 101 *et seq.* (Act 6), and the Homeowner's Emergency Mortgage Assistance Act of 1983, 35 P.S. §§ 1680.401c *et seq.* (Act 91), protect residential mortgage borrowers by requiring residential mortgage lenders to detail ways in which they may bring their mortgages up to date and forestall foreclosure. Section 403 of Act 6 states that "[b]efore any residential mortgage lender may accelerate the maturity of any residential mortgage obligation [or] commence *any legal action including mortgage foreclosure* to recover under such obligation" the lender must give the borrower notice of the lender's intent at least 30 days in advance. 41 P.S. § 403(a) (emphasis added). Such notice should include, *inter alia*, "exactly what performance including what sum of money, if any, must be tendered to cure the default" and the time within which the borrower must cure the default. 41 P.S. § 403(c).

Statutory notice is mandatory, and the failure to provide notice can lead to a foreclosure being set aside. ***See Spivak***, 104 A.3d at 9-10 (citing ***General Elec. Credit Corp. v. Slawek***, 409 A.2d 420, 422-23 (Pa. Super. 1979) and ***In re Sharp***, 24 B.R. 817, 821 (Bankr.E.D.Pa. 1982)). "The purpose of Act 6 . . . is to help residential homeowners reacquire property that has been lost, or to prevent the imminent loss of money or property, because of the impermissible actions of residential mortgage lenders." ***Spivak***, 104 A.3d at 10 (quoting ***Benner v. Bank of Am., N.A.***, 917 F.Supp.2d 338, 357 (E.D.Pa. 2013).

In **Spivak**, this Court reversed summary judgment in a mortgage foreclosure action when the mortgagee voluntarily discontinued an earlier action and failed to send a new notice prior to launching the second action. **Spivak**, 104 A.3d at 7. "When a residential mortgagee delivers an Act 6 notice, commences a foreclosure action against a mortgagor ("first action"), discontinues that foreclosure action, and re-files another foreclosure action against a mortgagor for the same premises ("second action"), the lack of a new notice prior to the second action is fatal to the second action." **Id.** **Spivak** is distinguishable from the instant case, however, because the mortgagee did not voluntarily discontinue the first action; it failed to file a timely answer to preliminary objections. **See** Defendant's Preliminary Objections to the Complaint, 4/21/2013, at Exhibit C. Morgan was under no requirement to send a new notice to Taggart. The trial court did not err.

Next, Taggart raises 17 separate issues that the trial court erred as a matter of law or abused its discretion in allowing substitution of plaintiffs, in finding various assignments of the Note as valid, in denying several motions and in making assorted other findings. We have reviewed the certified record and the trial court's comprehensive opinion discussing these issues. Trial Court Opinion, 2/26/2016, at 5-13. Because the trial court's opinion thoroughly and accurately addresses these remaining issues, we rely on it for disposition of these claims. Because the trial court did not abuse its discretion or err as a matter of law, no relief is due. The parties are directed

to attach a copy of the trial court's opinion in the event of further proceedings.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2017

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

JP MORGAN CHASE BANK N.A., substituted   :
GREAT AJAX OPERATING PARTNERSHIP,   : July Term 2013
L.P.,   :
  : No. 03473
  Plaintiff,   :
  : 265 EDA 2016
  v.   : 467 EDA 2016
  : 470 EDA 2016
  :
KENNETH TAGGART   :
  :
  Defendant   :

**Powell, J.**                                                 **February 26, 2016**

## OPINION

### 1.    Procedural History

On July 26, 2013, JP Morgan Chase Bank, N.A. filed a Complaint in mortgage foreclosure. On October 29, 2013, following the overruling of his preliminary objections, Appellant, Kenneth J. Taggart, filed an Answer to the Complaint. On January 15, 2015, the Honorable Nina Wright Padilla denied Motions for Summary Judgment as well as Appellant's Motion for Preliminary Injunction. On February 6, 2015, Judge Wright denied Appellant's second Motion for Preliminary Injunction.

On February 23, 2015, Great Ajax Operating Partnership, L.P. ("Great Ajax") filed a Certification of Plaintiff's Counsel attesting to substitution of Plaintiff under Pa. R.C.P. Rules 2351 and 2352. On April 11, 2015, Appellant's Preliminary Objections to Plaintiff's Certification were overruled.

On May 27 and 28, 2015, a trial in this matter was held in front of the Honorable Kenneth J. Powell Jr., sitting without a jury. On November 25, 2015, after receiving post-trial briefs, this



Court rendered a verdict in favor of the Plaintiff. This Court denied Appellant's post-verdict motions on January 6, 2016 and Appellant filed a Notice of Appeal that same day.[1] This Court ordered Appellant to submit a Statement of Matters Complained of on Appeal pursuant Pa.R.A.P. 1925(b). Appellant filed a timely Statement on January 26, 2016.

## II. Facts

On July 20, 2005, Appellant borrowed One Hundred and Twenty Thousand ($120,000.00) dollars from Chase Bank, USA, N.A. for the purchase of property located at 7242 Saul Street, Philadelphia, PA 19149. The loan was evidenced by an adjustable rate note ("Note") and an original mortgage instrument ("Mortgage"). Under the Mortgage, Appellant pledged the property at 7242 Saul Street as collateral for the loan which Appellant held title to by virtue of a deed dated October 1, 2001, and recorded on December 4, 2001. N.T. 5/27/2015 22-27; Exhibits P-1, P-2.

As permitted in Paragraph 1 of the Note, the Note was assigned multiple times.[2] On March 8, 2012, the rights and interest in the Mortgage were assigned to "JP Morgan Chase Bank, N.A." On February 19, 2014, the rights and interest in the Mortgage were assigned to "Ventures Trust 2013-I-H-R." On February 23, 2015, the rights and interest in the Mortgage were assigned to "OHA Newbury Ventures, L.P." On February 23, 2015, the rights and interest in the Mortgage were assigned to "Great Ajax Operating Partnership, L.P." N.T. 5/27/2015 at 29-38; Exhibits P-4, P-5, P-6, P-7, P-8, P-9.

Appellant defaulted on the loan effective March 1, 2009 by failing to make monthly payments. No payments on the loan were made by Appellant after the date of default. From

---

[1] Appellant filed a subsequent Notice of Appeal on February 4, 2016.
[2] "…the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder." Exhibit P-1.

March 2009 through May 27, 2015, Great Ajax incurred damages of $184,084.79 due to Appellant's default. N.T. 5/27/2015 at 48, 64, 66-69.

Appellant testified on his behalf at trial. Appellant denied that the signature on the Note and Mortgage was his signature. However, Appellant admitted that he borrowed $120,000.00 from JP Morgan Chase Bank N.A. for the property at 7274 Saul Street. Appellant further admitted that he stopped making payments on the loan on March 1, 2009 and that he had not paid of the balance of the loan in full. N.T. 5/27/2015 at 159, 162-163, 172, 173-174.

## III. Issues[3]

1. Whether the trial court erred in finding that the Act6/91 notice was not defective for failure to comply with statutory laws and contractual obligations.
2. Whether trial court erred in finding that the original Plaintiff, J.P. Morgan Chase Bank N.A. had possession of the original note at the time the foreclosure was filed, or subsequent Plaintiffs when they were substituted as Plaintiff.
3. Whether the trial court erred in finding that, OHA Newbury, Ventures, L.P., did not need to be substituted as Plaintiff when it alleged ownership since the foreclosure was filed.
4. Whether the trial court erred in finding that, Great Ajax Operating Partnership, L.P. was a, "Party Entitled to Enforced the Note", a "Holder of the Note", or a "Holder in Due Course", pursuant to The Pennsylvania Uniform Commercial Code Article #3.
5. Whether the trial court erred *in finding that, the note at trial was not destroyed* when evidence at trial and testimony indicated a missing, "an allonge", endorsing the note to Ventures Truse-2013-I-H-R., or destroyed as the note was *permanently affixed together by stable or other means, was in separate pieces, and held together only by a paper.*
6. Whether the trial court erred in finding that, the signature page #3 of the note was not clearly forged, and was not the original signature of Defendant.

---

[3] The issues are copied verbatim from Appellant's Statement.

7. Whether the trial court erred by: not including Defendants, August 10, 2015, response to Plaintiff's Brief, filed July 17, 2015, when the court entered a verdict in favor of Defendant.

8. Whether the trial court erred in finding that: "The Note" presented at trial was the original note.

9. Whether the trial court erred in finding that, the assignment of mortgage, dated February 19, 2014, from: J.P Morgan Change Bank to Ventures Trust 2013-I-H-R, was valid.

10. Whether the trial court erred in finding that, the assignment of mortgage, dated February 23, 2015, from: Ventures Trust 2013-I-H-R to OHA Newbury Ventures, L.P., was valid.

11. Whether the trial court erred in finding that, the assignment of mortgage, dated February 23, 2015, from: OHA Newbury Ventures, L.P. to Great Ajax Operating Partnership, L.P, was valid.

12. Whether the trial court erred in finding that, the mortgage did not follow the note invalidating the mortgage and note as they are inseparable.

13. Whether the trial court erred in finding that, there was a witness [at trial] with personal knowledge of the case to support a, payment history, loan, history, and balance, on the loan.

14. Whether the trial court erred in failing to cite that the case was not prosecuted by The Real party of Interest at all times during the course of the litigation.

15. Whether the trial court erred in failing to cite improper substitution, on February 23, 2015, of Great Ajax Operating Partnership. L.P. pursuant to: Rule 2351 & Rule 2352.

16. Whether the trial court erred in not citing Defendants defenses pursuant to: Pennsylvania Uniform Commercial Code, 3309 (a) & (b) & §305(a),(b), & (c).

17. Whether the trial court erred in denying, the Defendant's Motion to Re-Open Discovery, filed March 16, 2015.

18. Whether the trial court erred in denying, "Motion to Take Judicial Notice", filed October 28, 2015.

## IV.    Discussion

Appellant alleges this Court erred in denying his Motion to Re-Open Discovery filed after Great Ajax was substituted as Plaintiff pursuant Pa. R.C.P. Rule 2352. The standard of review when determining the propriety of a discovery order is whether the trial court committed an

4

abuse of discretion. *Bensinger v. Univ. of Pittsburgh Med. Ctr.*, 98 A.3d 672, 682 (Pa. Super. 2014) (citation omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Parr v. Ford Motor Co.*, 109 A.3d 682, 690-91 (Pa. Super. 2014) (*quoting Grady v. Frito–Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003); *Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.*, 77 A.3d 1, 11 (Pa. Super. 2013). In his Motion, Appellant gave no reason why it was necessary or even beneficial to re-open discovery. Appellant did not provide what discoverable material was outstanding or what proposed discovery Appellant was seeking. Presently, Appellant still does not present to this Court any prejudice suffered by not re-opening discovery. Accordingly, this Court did not err in denying Appellant's Motion.

Appellant claims that this Court erred in finding there was a witness with personal knowledge of the case to support the payment history and balance on the loan. Lysa Tracy, an employee of Gregory Funding L.L.C., the servicer of the loan, personally reviewed the file and all of the documents contained therein and testified about the documents she reviewed. N.T. 5/27/2015 at 73-74, 80. These documents included the transaction history on the loan from JP Morgan Chase, MCM Capital, and Gregory Funding, L.L.C. Exhibits P-14, P-15, P-16. This claim is meritless.

Appellant claims that this Court erred in "not including [Appellant's], August 10, 2015, response to Plaintiff's Brief, filed July 17, 2015, when the court entered a verdict in favor of [Plaintiff]." Appellant is mistaken in his allegation. Although this Court did not grant Appellant's request for an extension of time to file his post-trial brief, this Court accepted and considered his late-filed post-trial submissions. Appellant filed his post-trial brief on August 10,

5

2015 and subsequently filed multiple additional motions on October 28, 2015. This Court

considered all of Appellant's submissions before entering a verdict in favor of Great Ajax on

November 25, 2016. This Claim is meritless.[4]

Appellant contends this Court erred in denying his "Motion to Take Judicial Notice." Rule

201 of the Pennsylvania Rules of Evidence governs judicial notice, and states, in relevant part, as

follows:

> (b) Kinds of Facts That May Be Judicially Noticed. The court may
> judicially notice a fact that is not subject to reasonable dispute
> because it:
> (1) is generally known within the trial court's territorial jurisdiction;
> or
> (2) can be accurately and readily determined from sources whose
> accuracy cannot reasonably be questioned.

*U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 392 (Pa. Super. 2015) (citing Pa.R.E. 201(b)-(c). On

October 28, 2015, Appellant filed a Post-Trial Motion which contained section "I" entitled "Take

Judicial Notice." This section contained eight subsections alleging trial errors. Trial errors are

neither facts which are generally known nor are they facts which can be readily and accurately

determined. This Court did not err in dismissing Appellant's Motion to Take Judicial Notice of

alleged trial errors.

Appellant claims that "the trial court erred in finding that the Act6/91 notice was not

defective for failure to comply with statutory laws and contractual obligations." This Court

interprets Appellant's claim as alleging Great Ajax violated the Act 6 and Act 91 notice

requirements by failing to send a second notice after it was substituted as Plaintiff. Section 403

of Act 6 imposes extensive requirements on residential mortgage lenders who must provide a

---

[4] To the extent Appellant claims this Court erred in failing to grant his request for an extension this Court notes that the grant or denial of a continuance is a matter within the sound discretion of the trial court. First *Lehigh Bank v. Haviland Grille, Inc.*, 704 A.2d 135, 139 (Pa. Super. 1997); *Zarrin v. Jeffries-Baxter*, 937 A.2d 1126 (Pa. Super. 2007).

6

detailed notice of intent to foreclose before taking any action against a residential mortgage debtor. *See* 41 P.S. § 403; 35 Pa.C.S.A. § 1680.403c. Specifically, Act 6 and Act 91 require that that before any residential mortgage lender may *commence any legal action,* including mortgage foreclosure, to recover under such obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance. 41 P.S. § 403(a); 35 Pa.C.S.A. § 1680.402c(a). Appellant cites *Wells Fargo Bank N.A. v. Spivak*, 104 A.3d 7 (Pa. Super. 2014) as support for his position. In *Spivak,* the Superior Court reversed the trial court's grant of a foreclosure judgment in favor of a lender when the lender did not send a second notice of intent to foreclose prior to initiating a second foreclosure action. *Id.* at 9–10. The court concluded that a lender must send a new Act 6 notice prior to commencing a second foreclosure action. *Id.* at 10.

Both Acts 6 and 91 require notice before the commencement of a legal action. Here, Chase Home Finance, L.L.C. sent out a notice on April 22, 2010 that complied with all of the statutory requirements. There is no requirement in Act 6 nor Act 91 that requires a second notice be sent if another party is substituted during the proceedings. This makes sense, as the purpose of the notice is to inform the mortgagor of the default and give them a chance to cure it. Here, unlike in *Spivak*, the same action continued after the notice was sent. Appellant received notice of the commencement of the foreclosure action three years before it commenced and defended against the action for nearly two years before Great Ajax was substituted as Plaintiff. In this case, in addition to not being required, no notice was needed, as it would have been redundant and confusing. This claim is meritless.

The majority of Appellant's remaining claims involve whether the Note is enforceable and who is the proper party to enforce the Note. As a preliminary matter, this Court affirms that a

note is a negotiable instrument governed by the Pennsylvania Uniform Commercial Code ("PUCC"). *JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1265 (Pa. Super. 2013).

Appellant makes several allegations that amount to a claim that the Note held by Great Ajax is not the original Note with an authentic signature. The first requisite of negotiability under the PUCC is that the instrument be signed by the maker or drawer, and that no person is liable on a negotiable instrument unless his or her signature appears thereon. *PHH Mortgage Corp. v. Powell*, 100 A.3d 611, 617 (Pa. Super. 2014) (citation omitted). 13 Pa.C.S.A. § 3308(a) provides:

> **(a) Proof of signatures.**—In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

13 Pa.C.S.A. § 3308(a). A person denying the authenticity of a signature on a negotiable instrument must do so by specific denial in the pleadings. If specifically denied, the party claiming validity has the burden of proof to establish said validity, but a rebuttable presumption exists that the signature is authentic and authorized. *PHH Mortgage Corp.*, 100 A.3d at 617 (citation omitted). Section 1201(b)(8) of the PUCC defines "burden of establishing" as "the burden of persuading the trier of fact that the existence of the fact is more probable than its nonexistence." *PHH Mortgage Corp.*, 100 A.3d at 617-18 (citing 13 Pa.C.S.A. § 1201(b)(8)).

The comment to Section 3308 explains:

> The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant. The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence. The defendant's evidence need not

be sufficient to require a directed verdict, but it must be enough to support the denial by permitting a finding in the defendant's favor. Until introduction of such evidence the presumption requires a finding for the plaintiff. Once such evidence is introduced the burden of establishing the signature by a preponderance of the total evidence is on the plaintiff.

13 Pa.C.S.A. § 3308 Comment.

In October 2013, Appellant filed an Answer containing New Matter. At Paragraph 11 of that pleading, Appellant affirmatively stated, "[o]n July 20, 2005, [Appellant] executed a mortgage and promissory note with Chase Bank USA, N.A.....for the subject property. The Mortgage and Promissory Note were thereafter on some date yet unknown sold and/or transferred...." Appellant not only failed to specifically deny the authenticity of the signature in his pleadings, but he acknowledged that he executed that Note. Appellant is precluded from challenging the authenticity of his signature under Section §3308(a) of the PUCC.

However, even if Appellant has properly denied the authenticity of his signature on the Note in his pleadings in compliance with the PUCC, the Plaintiff met its burden of establishing the authenticity of the signature. Lysa Tracy testified that the Note contained an original signature. N.T. 5/27/2015 at 22. Further, Appellant admitted that he borrowed $120,000 from Chase Bank for the Saul Street property and that the transaction was memorialized by the Note. *Id.* at 172. Accordingly, Appellant claims regarding the authenticity of the signature on the original Note are meritless.

Appellant makes multiple allegations that Great Ajax is not the party entitled to enforce the Note. A note securing a mortgage is a negotiable instrument under PUCC, enforceable by its possessor, regardless of doubts about the chain of possession or the status of the possessor as a "holder" of the note. *Murray,* 63 A.3d at 1268 (citing 13 Pa.C.S.A. § 3109(a)); *see also In re Walker,* 466 B.R. 271, 282, 285–86 (Bankr. E.D. Pa. 2012) ("[i]f a borrower cannot demonstrate

9

potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue"); *Jobe v. Wells Fargo Bank*, 2014 WL 271654, at *4–5 (M.D. Pa. Jan. 23, 2014). Our Superior Court has held that the mortgagee is the real party in interest in a foreclosure action. *PHH Mortgage Corp. v. Powell*, 100 A.3d 611, 619-20 (Pa. Super. 2014) (citing *Wells Fargo Bank, N.A. v. Lupori*, 8 A.3d 919, 922 (Pa. Super. 2010) (quoting *US Bank N.A. v. Mallory*, 982 A.2d 986, 994 (Pa. Super. 2009)).

The PUCC states that a person entitled to enforce an instrument includes the following:

### § 3301. Person entitled to enforce instrument
"Person entitled to enforce" an instrument means:
(1) the holder of the instrument;
(2) a nonholder in possession of the instrument who has the rights of a holder; or
(3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3309 (relating to enforcement of lost, destroyed or stolen instrument) or 3418(d) (relating to payment or acceptance by mistake).

13 Pa.C.S.A. § 3301.

Applying the PUCC, the court in *Murray* explained that that if a mortgagee can "establish that it holds the original Note, and that it is indorsed in blank, under the [PUCC] it will be entitled to enforce the Note ... even if there remain questions as to the chain of possession of the Note from the time of its making to its arrival in [a]ppellee's figurative hands." *Murray*, 63 A.3d at 1268 (citing 13 Pa.C.S.A. § 3109(a)). Section 1201 of the PUCC defines a "holder," in relevant part, as "the person in possession of a negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession." 13 Pa.C.S.A. § 1201(b)(21)(i).

Here, the Note contains an unconditional promise to pay a fixed amount of money with interest, payable to order at the time it was issued and first came into possession of the holder. The Note expressly states that the Lender may transfer the Note, and that anyone who takes the

Note by transfer is the Note Holder, who is entitled to receive payments under the Note, which is secured by the Mortgage on 7242 Saul Street. Great Ajax is the holder of the original Note which is indorsed in blank. Great Ajax's predecessors in interest had the right to transfer, and did transfer, their interest in the Note and Mortgage. At trial, Great Ajax produced the original Note together with all recorded assignments. *See* N.T. 5/27/2015 at 29-46; Exhibits P-1, P-2, P-3, P-4, P-5, P-6, P-7, P-8, P-9, P-11. The Note was originally payable to Chase Bank, USA, N.A. and through a number of assignments, Great Ajax obtained the original Note and Mortgage and the rights thereto. Although Great Ajax did not produce an allonge to the Note, specially indorsing the Note to Great Ajax, it was not required to do so.[5] Great Ajax currently possesses both the original Note and Mortgage; thus, Great Ajax is the holder of the Note and the proper entity to enforce the terms thereof.

Appellant makes many allegations that the assignments of the Note were invalid. As discussing *supra*, Great Ajax is the holder of the Note and entitled to enforce the Note regardless of whether there were defects in the assignments. *See Murray*, 63 A.3d at 1266, 1268; 13 Pa.C.S. § 3301 ("[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."). However, even though unnecessary, Great Ajax introduced all of the valid assignments from the Note's creation on July 20, 2005 to the final assignment to Great Ajax in February 23, 2015. These assignments were properly executed and recorded.

Appellant also argues that Great Ajax was improperly substituted. A successor is "anyone who by operation of law, election or appointment has succeeded to the interest or office of a party to an action." Pa.R.C.P. 2351. "The successor may become a party to a pending action by

---

[5] This Court notes that although Great Ajax did not produce an allonge, Appellant introduced a copy of the Note with an allonge. Exhibit D-4.

11

filing of record a statement of the material facts on which the right to substitution is based."

Pa.R.C.P. 2352. In *Murray*, the Court explained that possession of the Note established successor status. 63 A.3d at 1269. Here, as discussed *supra*, Great Ajax has conclusively established its possession of the Note and its status as the party entitled to enforce the Note. Accordingly, Great Ajax was properly substituted as Plaintiff in this case.

Appellant asserts that this Court erred in not "citing Defendant's defenses pursuant to Pennsylvania Uniform Commercial Code, 3309 (a) & (b) & § 305(a), (b), & (c).[6]" Appellant lists subsections of the PUCC which relate to enforcement of a lost, destroyed, or stolen instrument and lack of legal capacity or illegality of the transaction. Great Ajax established, and this Court finds, that it possessed the original Note. Accordingly, section 3309 is inapplicable. Additionally, Appellant presented no evidence of his lack of legal capacity. Finally regarding Appellant's assertion of fraud, this Court interprets the Appellant's argument as asserting that Great Ajax and its predecessors in interest engaged in fraud by fraudulently transferring the Note and Mortgage and by prosecuting the case without being the "real party of interest." Again, Great Ajax is the holder of the original Note. Further, the assignments were legally made and properly recorded. Great Ajax is the party entitled to enforce the Note and has committed no fraud in enforcing its rights under the Note.

Next, Appellant claims that the "trial court erred in finding that, the mortgage did not follow the note invalidating the mortgage and note as they are inseparable." It is well-settled that where "mortgaged premises are pledged as security for debt,"... "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries

---

[6] This Court believes Appellant's Statement of Matters Complained of on Appeal contains a typographical error. This Court interprets Appellant's Statement as citing 13 Pa.C.S.A. § 3305.

12

the mortgage with it, while an assignment of the latter alone is a nullity." *Carpenter v. Longan*, 83 U.S. 271, 274, 21 L. Ed. 313 (1872). Appellant again is mistaken in his allegations. Both the Note and the Mortgage, which were assigned to Great Ajax on February 23, 2015, were contained within the collateral file and introduced as evidence. N.T. 5/27/2015 at 25; Exhibits P-1, P-2. This claim is meritless.

## V.    Conclusion

For the foregoing reasons, the decision of this Court, granting judgment in favor of the Plaintiff, Great Ajax, and against Appellant, should be affirmed.

BY THE COURT,

_____
KENNETH J. POWELL, JR., J.